UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PATRICIA A. HENDERSON, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 08-167-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and widow's benefits case contends that the administrative law judge erred by failing to comply with Social Security Ruling 06-03p in evaluating a functional assessment and by wrongly evaluating the evidence concerning her credibility. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from fibromyalgia, an impairment that was severe but which did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3 & 4, Record at 20; that she had the residual functional capacity to lift, carry, and push or pull up to 20 pounds

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on January 16, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

occasionally and 10 pounds frequently, and to sit, stand, and walk up to six hours each in an eight-hour work day, Finding 5, *id.* at 21; that she was capable of performing her past relevant work as a golf shop clerk, Finding 6, *id.* at 27; and that she accordingly was not under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 7, *id.*  The Appeals Council declined to review the decision, *id.* at 6-8, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 647 F.2d 622, 623 (1st Cir. 1989).

The standard of review herein is whether the commissioner's determination is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process.  At Step 4, the claimant bears the burden of proof of demonstrating inability to return to past relevant work.  20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step the commissioner must make findings of the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

### Discussion

### A.  SSR 06-03p

The first challenge raised by the plaintiff is based on a functional assessment performed at the request of one of her treating physicians.  Itemized Statement of Errors ("Itemized Statement") (Docket No. 7) at 2-5.  The administrative law judge stated the following about this assessment:

> The record contains a KEY Functional Assessment based on an evaluation on October 25, 2006 that is thought to be valid by the evaluator, Joel D. Chretien, a Senior Assessment Specialist.  The undersigned does not give the findings in the assessment great weight because the assessor is not a medical practitioner and because the findings are inconsistent with the allegations as well as some of the activities of the claimant.

Record at 27.  The plaintiff contends that this "cursory" evaluation is erroneous because it fails to comply with the requirements of Social Security Ruling 06-03p.  Itemized Statement at 3.

The Ruling at issue provides, in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources, who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity.  Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.  In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

Social Security Ruling 06-03p ("SSR 06-03p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) at 333.

The assessment at issue appears at pages 282-91 of the Record. It is signed by Joel D. Chretien, Senior Assessment Specialist, whose education and qualifications are not otherwise mentioned. It is addressed to the claimant, with a copy to the attorney representing her here. Record at 282. The records of a treating physician dated September 28, 2006, include the notation "referred for funct'l capacity evaluation," *id*. at 348, and the assessment at issue is dated October 27, 2006, *id*. at 282, but there is no other apparent connection between the two. The plaintiff characterizes Chretien as a "medical source[,]" Itemized Statement at 3, and argues that the administrative law judge's discounting of the assessment's conclusions because they were not drawn by a "medical practitioner," Record at 27, is an "error of law." Itemized Statement at 4.

Under the Social Security regulatory framework, the term "medical sources" refers to "acceptable medical sources" and other health care providers. SSR 06-03p at 328. "Acceptable medical sources" are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. There is no suggestion in the record that Chretien fits any of these categories. Other health care providers cannot give medical opinions, *id*. at 329, and are defined to include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. *Id*. Again, there is no information in the record to indicate that Chretien falls within any of these professional categories. However, this court and others have treated the reports of assessment specialists as medical information. *See, e.g., Bilodeau v. Barnhart*, 2004 WL

4

2677219 (D. Me. Nov. 24, 2004), at *2; *Kyle v. Barnhart*, 2004 WL 51219 (D. Del. Jan. 6, 2004), at *6, *8; *Serson v. Barnhart*, 2003 WL 22002433 (D. Minn. Aug. 19, 2003), at *1- *2.

In any event, the appropriate question is not how Chretien should be characterized, but rather how his report should be treated. While disregarding the report entirely merely because it was not authored by a "medical practitioner" might well be an error, that is not the sole basis on which the administrative law judge acted in this case. He stated that he did not "give the findings in the assessment great weight," Record at 27, which is something less than outright disregard, and he also concluded that the findings were "inconsistent with the allegations as well as some of the activities of the claimant." *Id*. Chretien found, *inter alia*, that the plaintiff could "sit for up to 60 minute durations," up to a total of 6 hours in an 8-hour work day, stand "for 30 minute durations," up to a total of 3 to 4 hours, and walk "for occasional, short distances" for a total of 2 to 3 hours. *Id*. at 282-83. He also limited her use of her hands or arms to "20-30 minutes of continuous usage." *Id*. at 282. He found her capable of carrying 10.8 pounds. *Id*. at 283.

The administrative law judge found that the plaintiff could carry 10 pounds frequently and sit, stand, and walk up to six hours in an eight-hour work day. *Id*. at 21. This is consistent with Chretien's findings as to carrying weight and sitting. Chretien's findings are inconsistent with some of the plaintiff's allegations about her limitations, as recorded by the administrative law judge. *Id*. They are also inconsistent with some of the plaintiff's activities of daily living as recited by the administrative law judge. *Id*. at 23, 25-26. Thus, while the administrative law judge's discussion of his conclusions regarding Chretien's assessment is minimal, I conclude that it meets the requirements of SSR 06-03p, as set forth above, although the question is a close one.

That paragraph of the opinion refers with sufficient specificity to other parts of the opinion which, taken together, allow this court to review the question adequately.

### B.  Credibility

The plaintiff also contends that the administrative law judge erred in evaluating her credibility.  Itemized Statement at 5-7.  Specifically, she asserts that the administrative law judge failed to consider a lumbar MRI and the statement of Richard S. Bailyn, M.D., both of which only became available after the evaluations performed by the state-agency physicians upon which the administrative law judge relied.  *Id.* at 5-6.  The state-agency evaluations are dated October 11, 2004, and February 26, 2005.  Record at 229, 273.  Dr. Bailyn's note is dated February 26, 1997, *id.* at 275, and the MRI report is dated November 26, 1999, *id.* at 279.  I see no indication in the administrative record that these records were only submitted after the state-agency reviews were completed.  At least one of the two state-agency reports specifically relies on medical data dated October 2004, *id.* at 229, a date many years after the two records the plaintiff contends were "ignored."

Although it is true that the administrative law judge's opinion does not specifically mention the two reports on which the plaintiff now seeks to rely – Exhibits 15F and 16F – the decision was made at Step 4 in this case, where the burden remains with the plaintiff.  Her itemized statement in essence asks this court to interpret raw medical data in her favor.  The court cannot conclude from these documents that they "provide objective support" for diagnoses of vertobrogenic disorders, Itemized Statement at 5, nor does the plaintiff suggest how such diagnoses, if accepted by the administrative law judge, would necessarily change the commissioner's decision.  At most, on the showing made, there might be a harmless error in the decision in this respect.

The next challenge offered by the plaintiff to the administrative law judge's assessment of her credibility is based on his reliance on her failure to follow recommended treatment. *Id*. at 6-7. She argues that Social Security Ruling 96-7p required the administrative law judge to consider her explanation for any failure to follow recommended treatment, and that he wrongly discounted a note in a medical record to the effect that she did not want to pursue certain tests because she felt the costs would not be covered by her insurance. *Id*. at 6.

The portion of the administrative law judge's opinion to which this argument apparently refers is the following:

> <u>Failure to Pursue Recommended Treatment.</u>  Dr. Sax reported in December 2004 that the claimant refused to take recommended tests because she had a high insurance deductible (Exhibit 19F). Yet the claimant reported to Dr. Quinn in October 2004 that she was able to live off a settlement she received from her ex-husband's estate and she was able to travel to Florida each year. She also refused to undergo counseling and treatment with a psychiatrist despite strong recommendations from treating and examining physicians (Exhibits 21F and 22F). The claimant's refusal to pursue prescribed treatment and recommended testing indicates that her symptoms are not as severe as she has alleged. It would be expected that anyone unable to do anything for more than a few minutes would do anything she could to improve her condition. Her refusal weighs against her credibility.

Record at 26. Social Security Ruling 96-7p, on which the plaintiff relies in this regard, deals with evaluating symptoms as an indicator of a plaintiff's credibility. Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) at 133. The portion of the Ruling quoted by the plaintiff is found at page 140, under the heading "Medical Treatment History." That section of the Ruling does allow the administrative law judge to find a claimant's statements less credible if the records "show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," provided

7

that the administrative law judge first considers any explanations that the individual may provide or other information in the record that may explain the failure.

Contrary to the necessary inference underlying the plaintiff's argument on this point, there was no need to question the plaintiff further at the hearing, as she provided the explanations, as she notes, that she felt the costs of the treatment would not be covered by insurance and that she accompanied her partner, a golf professional, to Florida every year. Itemized Statement at 6-7. The fact that she was able to live on a financial settlement at the time she declined to undergo recommended testing is sufficient to allow the administrative law judge to discount her implied claim that she could not afford the testing. Absent is any effort by the plaintiff (who, as noted, bears the burden of proof at this stage of the evaluation process) to show that her insurance coverage at the time did not in fact include the specific tests recommended, what the tests would have cost, or why her financial resources could not be extended to cover those costs. I am less impressed by the citation to the plaintiff's testimony about travel to Florida because she testified that she worked while in Florida, making it clear that the annual "trips" were not vacations for her and that she could earn enough to pay for the travel while there rather than dissipating funds that might otherwise be available for medical costs.

With respect to the decision's reference to the plaintiff's failure to pursue recommended counseling and psychiatric treatment, the plaintiff asserts that she has pursued such treatment, citing pages 292-311 of the record. Itemized Statement at 7. The administrative law judge cites Exhibits 21F and 22F as the basis for his finding on this point. Record at 26. Exhibit 22F does not substantiate a failure to pursue recommended psychiatric treatment; rather, it mentions the plaintiff's own report that she "has seen a psychiatrist in the past but does not have much confidence in them presently," Record at 352, and that physician's observation that "she will

most benefit I believe from successful psychological intervention." *Id*. at 351. Exhibit 21F, however, does include the following relevant statements:

> [July 5, 2006]  Bad experiences with several counselors.  "They'd have to lock me up to make me do this." . . . Suggested Dr. Dreher Referral but at this point not interested.

Record at 329-30.

> [October 13, 2006]  Pt will not consider seeing a psychiatrist for co-management . . . She refuses to see a psychiatrist at this time, which I recommended for further workup of the depression/anxiety component of her condition, and the fact that she has failed so many antidepressant meds.

Record at 349-50. The records that the plaintiff cites, from Tri-County Mental Health Services, are dated from October 30, 1998, to October 26, 1999, *id*. at 292-311, a period long before her alleged onset date of October 15, 2003.  *Id*. at 17.  Those records accordingly do not refute the administrative law judge's conclusion.  Nor does the statement of a rheumatologist in November 2006 that she cites, Itemized Statement at 7, to the effect that "she has tried just about all the medications that we find might be beneficial" have any bearing on her failure to seek recommended psychiatric treatment.

Finally, the plaintiff asserts that "[t]he credibility discussion also erroneously discounts the Functional Assessment . . . as discussed above." *Id*. at 7.  For the reasons already discussed, this document does not bolster the plaintiff's credibility such that the administrative law judge was required to accept all of her statements about her symptoms.

9

**Conclusion**

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of January, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge